Case No. 245547, USA v. Tomarcus Baskerville. Case No. 245574, USA v. Courtland-Springfield. Case No. 245598, USA v. Thomas Smith. Oral arguments not to exceed 30 minutes per side. 30 minutes will be shared by the defendants. Ms. Henderson, you may proceed for the appellant. You saved two minutes for a rebuttal, right? Yes, I reserved two minutes for a rebuttal. Perfect. Go ahead. Yes, Your Honor. I want to take my brief a little out of order, Your Honor. I want to take it in the order of importance to the issues. The most important issue, Your Honors, is the jury taint. When we were in trial, we were trying to figure out why the jury was taking so long. We did not understand why the jury was taking so long until day four of deliberations. That's when the first note came through? That's when the first note came through on day four, Thursday afternoon, I believe, because the jury got the case on Monday. So on day four, Thursday afternoon, we were called in and that's when the first note came in about the jury not deliberating. And there was someone who was refusing to deliberate. So at that time, we did not know about the issues of the jurors thinking that they were being followed or harassed or anything about gang colors or any of that. So at that point in time, Judge Lipman asked us to look into whether or not there was something more to this. And we came back and we had a conference, I think that Friday morning, where it was decided that the jurors were going to continue to deliberate without knowing this other harmful information. And at that point in time, I think we all agreed that it was okay for them continuing to deliberate. Then later that day, we got called back about the second set of information about the jurors thinking they were being followed. I don't want to use all your eight minutes on the fact. Oh, I'm sorry. Sorry. Sorry. So the judge eventually calls in the foreman of the jury, right? Yes. Yes, Your Honor. Counsel's not present for that interview. No, we're not present for that interview, Your Honor. And that is... Go ahead. It does the interview and then relays the results to counsel. Right. And that's when we find out about the information. And at that point in time, that's where we asked for the first request for a mistrial at that time. So mistrial is a pretty dramatic remedy. There had been an interim remedy of a more thorough investigation of the jurors, like individual interviews of the jurors who were affected or all the jurors. And no one asked for that, right? No one asked for that, Your Honor. But we did ask for, although you're calling it the most extreme remedy, I think it would... Is there a more extreme remedy? No, Your Honor. I don't know. But mistrial's number one. I think Judge Radler's right. And to his point, when the judge offered, I thought you said, there's no need to do individual conferences right now. If we get into asking more personal questions, then we're going to further entertain. So what you wanted is mistrial or nothing. You didn't want individual conferences, right? Your Honor, I will stand by that because once we found out that the jurors thought that they were being followed, there were some other instances, I think it was made mentioned, not in the conference, but made mentioned that the jurors thought that they might have been followed after court. What's the best practice at that point for a district judge to inquire? And it seemed to me both you and Mr. Garrett, Springfield's lawyer, objected to any type of process like that. I was not objecting to that. What I was strongly arguing for would have been... You said you'd taint them. Well, they were already tainted. So that's why the proper procedure to cure it would have been the mistrial right then because... Our case was pretty clear. You don't have to use the most drastic remedy. There are remedies short of that before you declare a mistrial. Your Honors, I don't think that that was the proper remedy at that time because they were already tainted when the jury's already tainted. And let me go back to one other thing. The other way the jury was tainted was by the perceived corrosion or persuasion of the court by saying that if you don't deliberate, you're going to be held in contempt. So if you don't deliberate, you're going to be held in contempt. And if you think you're being followed, then hey, I'm going to get it together and I'm going to deliberate and get this case over with. Did you have an answer to the jury's question as to the contempt portion of the judge's answer? We did not at that time because we did not know the other information. Had we known the other time that they thought they were being followed to the garage or in cars, we would have made the objection at that time. But since the information was not given to us... Why does that go hand in hand with that? I'm not sure I follow. Because your beef is you shouldn't force a jury to deliberate even though they take an oath to do so. You shouldn't tell them the contempt. Why does that go with the other part? I'm not sure I follow that. Because, your honor, I think at the time where the person was not deliberating, the information about them being followed was the reason why they weren't deliberating. There's a pretty standard instruction at that point, right? When someone doesn't deliberate, you say, look, you took an oath to deliberate. You have an obligation to do so, all the things, right? Yes, your honor. I'm putting myself in the position of the juror possibly at that time. Of course, we don't know. But if I'm the juror that thinks I'm being followed, and if I'm the juror that thinks that someone is going to get me, also that the court is going to... I'm going to get involved with the court. You ultimately find out that information. You don't go back and say, hey, you have to undo the contempt instruction or anything, because that is just a standard instruction that judges give when jurors refuse to deliberate. We did not ask for that, your honor, but we did ask for a mistrial. Right, I know that. So, is your theory on the mistrial that the jury was so hopelessly tainted that a remer hearing or any other subordinate remedy would have been worthless? Yes, your honor, that is my position. Okay, what's your position today? You didn't say, I'm not faulty necessarily, but you didn't say any of that to the district court judge. No, your honor, we did not. But based upon reading the record and getting everything together for today, the position, if we had known all the information combined at one time, then we would have made a more forceful... Go ahead. So, I was thinking your case was that there should have been a remer hearing at that point. Your honor, I... In other words, but if your argument is actually there should have been a mistrial because the jury was sort of hopelessly conflicted, that's a different question. Your honor, I... I think it'd be easier to show the remer, but harder to show the latter or the mistrial. Well, based upon the remer hearings, your honor, I did look at a couple of other cases. In Smith v. Nagy, 962F3R192, the court says that there must be a remer hearing. And I don't think it's on counsel per se in the middle of trial. Can you give me that site again? I'm sorry. 962F3R192, Smith v. Nagy. Well, so you don't think you have to even ask? And you also asked for a mistrial, so you asked for a more dramatic... You kind of moved the ball a little bit. I understand that I moved the ball, but when there's that type of commotion going on and we're in the moment, I think that a remer hearing would have been proper, but also that a mistrial is the correct solution. I guess I just feel like those are different legal questions. I think it's all together, your honor, because when we're there and the jury thinks that they're being followed, whether this is really happening or not, our job is to protect the jury. You preserved a mistrial request, but I don't think you necessarily preserved the remer, except you're saying you did because remers... Well... Can you cite a case or what's the closest case suggesting that a district court must give a saying that it would further potential prejudice? So, your honors, in remer itself, going back to remer itself, it says that when there is... Sorry. When the juror doesn't feel free to exercise his functions without anyone overlooking his shoulder or, I'm paraphrasing, or interfering with the jury's duties, that a remer hearing must happen, that the hearing must happen. So I don't think it's really on defense counsel to request the remer hearing at that point when it was so obvious that the jury had been tainted. I think the remer hearing should have happened automatically, but I think we should have gone further than that because we were already past with the notice that the jury had been tainted. When we're past it, then we get to the mistrial. Okay. Your time is up. Any further questions? Thank you. Thank you. You'll have your full rebuttal. Okay. Thank you. Mr. Parker, are you going second? Yes, your honor. You're also saving two minutes for rebuttals, so you may proceed. The, just to start off like I was planning on, this matter revolves around two issues. Should there have been a proper remer hearing conducted and should mistrial have been declared? I submit that once a proper remer hearing was conducted, should have been conducted, that mistrial would have been granted in this. Your honors jumped in understandably about why did we go to such an extreme to ask for mistrial? And the reason why is because, pardon the terminology, all hell had broken loose. What do we do with the fact that you didn't ask for a remer hearing and I think Mr. Garrett, on Mr. Springfield's behalf, said let them deliberate, quit interfering with them? It was presented to us by the court that we're dealing with a very delicate situation. I don't have the entire quote in my head, but the judge used, this is very delicate. We've got some problems and there's some intimidation going on with the jury. Now, try and come back to your question. We had one juror, everything was good up until Wednesday afternoon. They started talking about the guns, whether or not discharge or brandish, needed to be counted. Next morning, jury checks out. Jury doesn't know what's going on, nothing progresses. Question. Judge says talk. Come back, end of the day, nothing's happening. It's not working. Judge throws the hand grenade in saying contempt. Come back. Well, that's a standard in this trial. No, I'm not, that's the timeline. Right. Then come back on Friday and we have the conversation, or the judge has the conversation with the foreman, foreperson. Find out that juror A noticed the car, following him a couple of days, then suddenly taking his kid to school, car whips out in front of him, cuts him off, somebody jumps out in clothes that resemble... We know a lot of this. If all hell broke loose the way you described it, why would your client's counsel say let the jury deliberate? Because it was presented to us as it's a very delicate situation. We don't want to lose the jury if we don't have to. So all hell broke loose is an overstatement. There's no way, I just really can't reconcile those two. I wasn't there, but any time a judge... You just used that statement. I did. Describe it, and it really just feels inconsistent to me. I apologize. Any time a judge comes to me in a trial and says we've got a problem with the jury and it's not going good, it's a little hyperbole. I apologize. I'll stipulate all of that, but then subsequently the judge questions the foreperson and numerous times is told the jury independently has decided it can put all of this to the side, only adjudicate based on the facts and the law, move forward. Over and over again, that's repeated. The jury is polled. There's a split verdict. Things that would suggest they did indeed carry out the deliberations, not pursuant to some overlay of intimidation. Is it your position we just have to throw all of that to the side, and how do we know whether we can take those assurances or not? Can you repeat your last question? What do you do with all of the repeated assertions on the foreperson on behalf of the jury that they're going to move aside and adjudicate appropriately? Was the district court supposed to discount all of those? Yes. And what source would you point to? There are... We've said repeatedly you can take jury assurances of impartiality in assessing both mistrial and rumor hearing type issues. And if you ask juror one about their impartiality and they say that they can be impartial, you can take that. You ask juror two, they can be impartial, and they say, yes, you can take that. You ask juror three if juror eight can be impartial, and they say, sure, you can't take that. That's not them being impartial. But you would have gotten at that through individualized questioning, which multiple counsel said don't do, District Judge. It would have been best if it had gone through individual questioning. Over the objections of defendants that that was only going to further the prejudice. I submit that possibly the proper approach towards this was for the court to mention the word rumor and say, this is the situation we're dealing with. We need to consider a rumor hearing. I mean, I thought she said, should we interview him? And you all said no.  That's a, talking with the judge, I realize that is a casual conversation question about a serious situation versus this is what the law says about the situation. You all could have said, yes, we demand a rumor hearing. She said, should we interview the jurors or something to that effect? You all say no. The very first mention of the word rumor in this entire trial was after the verdict had entered when the prosecution, whose office and entire staff is located in that building, comes up and says, maybe we should consider a rumor hearing. I agree with that. I agree with that. But to me, that hurts your collective client team because I feel like this is plain error of you in terms of what the District Judge should have done once, pre-verdict, once confronted with this information. If you had all asked for a rumor hearing at that point and the District Judge said no, I might be pretty sympathetic to that. But because no one did, I think it's plain error of you. And to say it's plain error when the District Judge has interviewed the foreperson or foreman and has gotten information about the jury and no lawyer has told the judge to stop if the judge lets the case continue, it just doesn't strike me as plain error. Am I looking at that the wrong way? All right. Pointing out Rigsby, Lanier, Corrado, and Davis, they were mentioned in the briefs in all mentioned action verbs of hearing must be done, the judge has a duty to do it, and it is required. That is what it is. I don't submit that that's plain error if the judge is supposed to do it. You're saying sui sponte, the judge has to do it even over the objections of counsel? I think that, actually oddly enough, sui sponte was mentioned in one of the cases. But I think sui sponte, the judge says, we need to do this. I think the judge has an obligation to say this is what the law says we are to do. Because that's the judge's job is to make sure that the law is followed. And then if you object to us following the law, let me know. District judges always operate with counsel. Every trial I ever did, when something like this happened, I always consulted counsel. You never do it alone. You could say, I think this is the best course. But if counsel says, no, you're going to taint the jury, I mean, at that point, it seems to me I'm going to say, well, then I'm not going to do that. If you don't want me to do it, you've essentially, to me, it's worse than plain error. You've waived or forfeited it. Now, I guess forfeiture is plain error, but you waived it at that point. I understand. And going back over the years, the conversations I've had with the district judge along those situations is the district judge says, the law says we're supposed to do this. This is what we're supposed to do. But you can waive your right. Yeah. You can waive your Sixth Amendment right. You can waive your right to a Rummer hearing. Would you agree with that?  Yes, you can. But the judge did not say, the law says. Oh, come on. We don't use magic language all the time. We say, look, we should interview the jury. I would never say, the law mandates I conduct a Rummer hearing. I would say, look, I think we should interview the jurors and find out what's going on. That's exactly how I would say it. I'm sure if we look back at my transcripts, that's exactly it. And every attorney knew exactly what I was talking about. Well, the judge didn't say that. Can I ask you, in the cases you cited to us, in any of those cases, did the district judge take the threshold step of bringing in the foreman and asking the foreman some questions? There may be different cases the district judge just did nothing. Again, I think we're here on plain error. There's several cases in which judges did nothing. There's been cases where the judge brought in the juror who had been intimidated. There's three cases of that. Davis, Angulo, and versus Duckworth. Was that insufficient because not every juror was questioned? Or that was sufficient? It was insufficient because every juror was not questioned. Davis and Angulo, one juror was intimidated. Long story made short. Came in and said, this happened to me. I've been intimidated. Told all the other jurors. Judge found out. Judge said, are you good? And specifically in Davis, the individual said, no, I'm not. She was excused. Nobody else was talked to. Nobody else was talked to. That was not sufficient. That was not appropriate. None of those cases were plain error cases, right? No. And here's what the judge said. She said, but I think it's my obligation to touch base with each of the jurors individually and make sure each one is comfortable moving forward. I apologize if I've misspoke. Yeah, I think she did say that. That was her initial position. Right, yeah. OK, any further questions? OK, thank you very much. You'll have your full rebuttal. Yes, sir. Good afternoon, your honors. Benton Martin on behalf of Thomas Smith. I'm reserving two minutes. I'm going to be addressing the exact same issue. Sounds like the big issue in this case. And I want to pick up a little bit where we left off in terms of the district court's duty to order a Remmer hearing sua sponte. And I think the Corrado case is the critical one to look at here. And that was a case, it was one of these old Detroit mafia cases. There was some talk of a witness. You have that site. I'm sorry. Yes, it's 227 F 3rd 528. And Bob Morgan, one of our panel attorneys, raised it as a mistrial and said, we're asking for mistrial because it appears that the jury was tampered with. And the judge brought in the jury, asked them a series of questions. And this court decided that his questions weren't sufficient to root out what was going on and also remanded for a Remmer hearing and said that the district courts bear a duty to order a hearing sua sponte in those circumstances. I think that particularly Mr. Smith is sitting procedurally in the exact same position where his trial counsel asked for a mistrial. And that was her primary request. It was, we think that there has been so much of a taint in the jury here that there should be a mistrial. But that procedurally, given this court's case law, I don't think, I think we have if we get there, but I don't think looking at Corrado, I think that was enough to raise this to the court where the court then had an obligation to inquire into what was going on with the individual jurors, not just the four person. Well, what about when she says it and counsel objects? I mean, it's a little different posture, right? And it is, but it's, I think Mr. Smith was not objecting. This is, Mr. Smith is, her request is for his trial counsel is for a mistrial. And it is. Yeah, he just asked for a mistrial, but he didn't address the individual hearings as far as I can recall. Correct. So I don't think he's walking back in some sense like Mr. Garrett was on behalf of Mr. Springfield. So if the district court had ordered a Remmer hearing, we would be up on appeal with the two defendants who did object to individual questions saying that was an abuse of discretion because you furthered the prejudice. It seems in plain error posture, it seems to put the district court in a no-win situation. I mean, we wouldn't know what would have come out of that Remmer hearing. If the Remmer hearings had questioned individual jurors and they had said we're fine to deliberate, I don't know if we would be up here because it would have clarified all of that information. That's why I think they put that duty on district judges. And when you look at the cases, I think it's important. Oh, I did want to clarify one point. I think one of the difficulties reading it as just appellate counsel versus people who were trial counsel, they did not know what was going on with the M Chambers conference with the judge. I think the judge, when you compare her summary of what happened to what was said by the juror, he's a little more equivocal in their ability to continue deliberating. He said, and I would ask the court to look at page ID 8953 where he says, we're not sure the legal ramifications on the back end if we go one way or the other. I don't know. I don't think we can sit here and do anything since they're obviously under the threat of contempt or the risk of contempt. And I think I see them really wrestling. That's not really conveyed to trial counsel. She asked him, do you, this is 8954, do you feel to the lead juror that you could continue to deliberate and reach a fair and impartial verdict based on the evidence? Yes. And to further buttress that point, we came in this morning, everybody knew, and we got the situation with juror number one and number two, could we still be able to render a vote that was not based solely off the motion of what was going on at the moment? And everybody said yes. So that's one place where kind of point blank, the foreperson confirms that they had discussed as a jury that they were going to move forward. I mean, there were other instances of that as well. Respectfully honored. And he's summarizing exactly, that is before they knew about situation number two. He's saying we all took, we sort of took a, he uses the phrase temperature check, before we knew about the second situation. Once the second situation hits, he says we kind of have to give the room a little air to breathe, and then they convey that they're conflicted. And I think he's just more equivocal than the judge ends up conveying to the rest of the, when you compare that to what the judge says to the attorneys, and they're operating off that information just from the judge. It also happens at the end where I think that there is a problematic phrase that she sort of leaves him with, just in chambers with just the judge and the jury foreperson where she tells him this very well may be, I'm pursuing this as if it's very well may be connected to the case. But he confirms, again, that it could be anything. It could be a nothing burger in his words. And then, I mean, to button up the other point, after they're informed of the situation with the second juror, he again confirms on 8982 that they can believe what everyone is doing is, you know, working towards a verdict that is fair and impartial. Right. I think this goes back to Mr. Parker's point that the concern here is that this is one juror's perspective. And my fear with the last comment even is how that information was conveyed to the rest of the jury. And we see cases, there's I think the Owen case is one, it's an older case from the Seventh Circuit where they deal with the one juror who experiences a threat. But the problem was we don't know how that information was conveyed to the rest of the jury and how the rest of the jury actually really felt about that. What about when the foreperson says that the jury has reached finality as to some issues? That suggests that they're kind of operating as would be expected. I know the government raises, you know, ultimately there are some split verdicts. I spent, during the earlier, during the interview, in-camera interview, the presiding juror tells the judge that we've reached finality on some issues, I think. Right. That's not like hopelessly deadlocked, we can never succeed. It's at this point we are certain on something. I mean, that suggests progression. It certainly does. As I read this transcript, it's they had been deliberating and they had reached some conclusions. Then some of the threats came to light and things started to shut down. And then he, I read it as him saying, look, we're not disobeying your order. We're not trying to risk contempt by not deliberating. We're deliberating. But these threats have really created a problem in the jury. And then once this is all resolved, they come back with a verdict very quickly. And they basically say, you can stay here as long as you want since now they're worried people are tailing them home. And this, when we look at the cases, when we look at, when we fall back on Remmer and look at some of the cases, there's a real distinction between bribes and threats and some of the other cases the government's relied on, which are things where bailiffs are giving some innocuous information to a jury and they shouldn't. A juror recognizes a witness and that's not, there's some extraneous. These are things where I think it's really, it can be simple, right? And there can be less of an inquiry. And this was really the most serious type of threat, where you have people jumping out of a car to take pictures outside of a school. And they're potentially wearing the colors of the gang involved. And this is stuff that I don't think can be discounted in terms of the impact it may have had on the jury. Thank you. Thank you, counsel. Good afternoon, and may it please the court. John Alex Romano on behalf of the United States. The district court conducted a thorough inquiry into reports of jury tampering, and that inquiry confirmed that the external events affecting two jurors did not taint the jury's verdict. The district court did not commit any error, either by not sua sponte, individually questioning each juror, or by denying the mistrial motion. I'd like to begin by focusing on the challenge to the scope of the district court's inquiry and the standard of review. The claim that individual questioning was warranted at a hearing is subject to review only for plain error. That's because no defendant, as I think this court has noted through its questioning of my friends on the other side, no defendant asked for individual questioning. Is it your position that the standard of review is dispositive here? If we read the mistrial objection to maybe include a request for a REMER hearing, if we apply our ordinary level of review? I don't think it's dispositive. I think the government, on the question, I think there are two questions. One is preserved. We agree the mistrial motion, the challenge to the denial of that is preserved. On the challenge to the scope of the hearing, I think the government can prevail even if we're here on an abuse of discretion, which would be the ordinary standard that applies in preserved cases. But we're here, we think, on plain error review. This court is applying plain error review to a claim that a judge should have conducted a more thorough REMER hearing in the nature of individual questioning in the Mack case, in the Cachego case. In the Corrado case that Defendant Smith's counsel cited is distinguishable. I think the language of that case in and of itself says this is an unusual case. And this court- But it said it was unusual because of the nature of the tampering. And here the tampering, as your friends on the other side pointed out, is pretty serious. Why doesn't that case kick in and the district court have an obligation to say, look, I recognize what you're saying, but I'm going to make a record. Because I think in Corrado, this court said, in effect, that the defendants in Corrado made their objections known to the district court's inquiry. It was clear. And here, not only do you have the absence of a request- Isn't that a standard review point? Isn't that a standard of review point? No? I don't think that, as I recall, Corrado, the court was saying that as to why, I mean, it sort of lumped in. It didn't parse out sort of a plain error or not. All of that sort of went to the reasoning as to why the court should have sua sponte granted the hearing. But in Corrado, part of the reasoning as to why the court sort of held that the district court should have sua sponte did this is because it reasoned that the defense had, in effect, made its objections known to the district court's inquiry. And you don't have that here. Because not only do you have the absence of a request for individual questioning, but you have a district court who actually says, my initial inclination- in fact, she goes further. As Judge Chaparro was reading the transcript, I think I may have an obligation to individually question each juror. And several defense attorneys come out and say no. And as to Defendant Smith's point that his counsel didn't sort of object to individual questioning, the key point is that it's floated by the district court. The district court is saying, here we go. Maybe I should do this individual questioning. Several defense attorneys are saying no. And Defendant Smith's counsel had the opportunity then to say, Your Honor, we think you should hold the hearing. On the sua sponte point, is there any series of facts where you think a district judge has a sua sponte obligation to order a Remmer hearing? Because the record here is not great. You have two jurors who were harassed. You have slow progress in the jury. You had a couple of jury notes. It's not a great- you used the word unusual. All these cases are unusual, to some degree, obviously. But this is a pretty unusual case. So is there ever a case where the district judge just has to do it regardless of what counsel says? I think so. The court didn't do the steps that it did. We don't think that the argument is as strong here that the district court did not commit an error. But the court did interview the foreperson on two occasions. Judge Lippman made a credibility determination. This is at page ID 8979-80. In fact, she finds that the foreperson is reliable in being thorough in representing the views of the jury. In between, she goes back and she relays this- I think they all like the foreperson. But that doesn't get to the bigger point, right? I mean, they liked the foreperson. They liked how the foreperson was controlling the jury. I think there were a lot of compliments for the foreperson. But still, I mean, the taint is something separate. You can't rely- there's no case law that says you can rely on the foreperson to cure the taint. Not in and of itself. And we're not only relying on the foreperson. Here you have two discussions with the foreperson done with the consent of all the parties, right? Then you have the polling of the individual jurors. And there is some time that elapses between that second discussion with the foreperson, which is around midday, lunchtime-ish. And then they go back and they continue deliberating. And the verdict gets returned at about 4.15. Back to the Suis-Ponte point, is there a fact pattern where the judge just automatically has to do this? Or is that- you say that's never the rule? No, we do agree that there can be a situation where Suis-Ponte doing it would be warranted. We just don't think we're here in this case, given the three different areas of inquiry that the court pursued. Because you have the interviews of the foreperson. You have the polling of each individual juror. Then you have- After the fact. Your Honor, but very often, you know, Remmer hearings can be done sort of after the fact as well. And in fact, there was a sidebar- Maybe Remmer hearings are done when you discover the problem. True, and again- The problem was known much earlier. There were objections by two- Well, in fact, actually, the counsel for defendant Hobson, the defendant who was acquitted, in fact, I think also joins in that and says we don't think there should be questioning as well. So you have, in my recollection, counsel for three different defendants saying don't do this. You have the counsel for the fourth defendant not coming in and saying we should do this. The judge knew there was a problem, obviously. That's why they brought the foreman in. And a Remmer hearing is a completely different creature. It's everyone, typically, right? And at the end, you know, does it matter at the end of the- After the jury has reached its verdict and the judge has talked with counsel, she says, well, I kind of had my own Remmer hearing. I mean, she didn't have a Remmer hearing, but after the fact, she sort of thought she had one. I don't- I would say she probably didn't from the sort of black letter law of what Remmer hearings require. So what do we make of that? I guess I might disagree, Judge Radler, with your initial premise, which is that a Remmer inquiry always means individually questioning each juror. This court has affirmed the scope of an inquiry where that was not done. For example, in that case- The impact of jurors. I'm sorry? Say the impact of jurors. I mean, that- Right. And that can be gotten at at different ways. And I think, and I would draw analogy to a case in the DC circuit that we cite in our Williams, where the bulk of the inquiry into the extraneous influence on the jury was conducted through an examination of the foreperson. Now, there was some- Was that called a Remmer hearing? It was called a Remmer inquiry, right? And the district court, I'm sorry, the DC circuit rejected a claim that more should have been done, that there should have been individual questioning of jurors. Was the Remmer hearing held here, I guess, is the bottom line? Was this a Remmer hearing? Not in the sense of individually questioning jurors. I'm not trying to rely on semantics, Your Honor, but I think this court's cases, including the decision in Taylor, recognizes that a district court has discretion in how it structures its inquiry. So does that mean as an inquiry into the inquiry, the Remmer hearing inquiry? Yes. So was this a Remmer hearing? Not in the sense, again, if a Remmer hearing is defined- It wasn't a fulsome one, but does it cross the line of sufficiency as a Remmer hearing? I absolutely- We can hold that the district judge here, in your mind, conducted all that was required at a Remmer. That is the government's position, Your Honor, even if we're under an abusive discretion standard or on plain error review. But the fact that we believe the appropriate standard of review is plain error makes this even more difficult for the defendants to show that the district court here should have conducted individual questioning of jurors. And I do think we also have to rely on, we've talked about the discussions with the four persons two times in camera with the consensus of the parties, the individual polling, which I think it was fair for the district court to rely on. The district court has a lot of experience with trials, assesses demeanor, can assess the demeanor of the jurors as she's polling them, just as she could assess the demeanor and the credibility of the four person. Then you go to the third aspect, and that is the split verdict. And we do think the law recognizes that where a jury has returned a split verdict, that reflects its sort of deliberations and its rendering of a verdict based on the evidence, the fact, and the law, just as each juror said they had done when asked by the district court. One defendant is acquitted of both counts against Michael Hobson. Defendant Springfield is acquitted on four counts. The jury declines to find brandishing and discharging of a firearm with respect to the 924C counts against defendants Baskerville and Smith. So we think that reflects the fact that the jury each juror did what they said, which was deliberate based on the facts and the evidence in the case, and set aside the information about the external events affecting two jurors. I mentioned the Williams case. We do think the Williams case is significant, not only because the district court in Williams conducted most of its inquiry through the four person, although it did ask some en masse questioning of jurors, but in affirming what the district court did, how it conducted its inquiry, the D.C. Circuit sort of placed some of the illness on the defendants to have said more and asked for more, right? When the parties are called on to assist the district court in how to get to the bottom of this report of potential jury tampering, it wasn't jury tampering in Williams, it was something else. When the parties are called on to do that, they have an obligation to speak up, and they can't wait to appeal until the case is on appeal to turn around and say that more should have been done. In the Pinnell case, I think Judge Hermendorfer, you might have mentioned this in questioning one of my friends on the other side, that case is significant because this court recognized that a district court can rely on jurors' assurances. And they did ask for a Remmer hearing at the end, and this is the point Judge Riddler was making. She said, well, I did my own Remmer hearing by inquiring of the presiding judge and polling the jury. And at that point, that's where she does an analysis of the split verdict. So she's relying on the split verdict at that point. And again, it's only the government who's raising it and suggesting, deferring to the district court ultimately. And at that point, any defendant, the verdict had come back against each defendant. There was nothing for defense counsel to lose at that point, we would submit, by not joining this request saying, Judge, we think you should do more at this point. None of them did. And I think we have to sort of allow that a district court can rely on what it's- So that was Mr. Oldham who brought it up? Mr. Oldham or Mr. Bateman, one of the two prosecutors, yes. But it was brought up by the government. And there is, at that point, no joining in the request or the suggestion by any of the defense counsel. I have a Switch Gears question, if that's OK. Can you explain a little bit about the authorization jury instruction as to the drug trafficking predicate acts? And how are we, my understanding, I'll just say what I'm thinking about how this is coming to us, the posture, and you tell me if this is right or wrong. There was an initial objection to the government's proposed jury instruction with respect to the nexus between trafficking, but no particularized objection to the authorization component that then went to the jury. The theory of authorization for the trafficking was made to the jury in closing. Are we on, how does that interact with the sufficiency argument with respect to the trafficking as a predicate act? I don't think it need not interact because there is no independent challenge to the jury instructions. They were not challenged by defendant Smith, right? So if we think the evidence with respect to Smith's trafficking or any trafficking is sufficient under the authorization instruction, that's enough because we're on plain error on authorization? No, I think this is just a pure sufficiency claim. So in order to prevail on a sufficiency claim, where an indictment, as it did here, alleges various alternative bases for liability. So you have multiple purposes of the RICO enterprise being alleged and multiple ways in which we could show that defendant Smith agreed, and the standard for RICO conspiracy is just that he agreed that at least one co-conspirator would commit two racketeering acts related to one of the purposes. And I take it you think you get there even as to the night of June 17th with the two attempted murders? Exactly. We can get there through just focusing on the evidence of the violent racketeering acts. We can get there focusing alternatively on the evidence concerning the drug trafficking because there are, we think, we submit, and as we've argued in our brief, the evidence showed not just that the gang authorized members to engage in drug trafficking, but a regional, a rational jury could conclude that the drug trafficking actually benefited the gang. There's a way for gang members to make money, and they're required to pay financial dues. So we think that you can get, rely on the drug trafficking evidence even without looking at that authorization language because that's just an alternative way in which to satisfy the nexus. But because we're here on sufficiency review, we only need one, and there has not been a challenge to the jury instruction, sort of an independent claim. I was going to address sort of the mistrial motion, but I realize we've been talking about the jury issue quite a bit. So unless this court has any questions about sort of the legal standard, I'm happy to rest on the government's brief. Any questions? Thank you very much. Your Honors, I would like to, the rest of my brief, I would like to, for you all to consider that as well, even though this jury issue is the most important. But there's one other thing that I want to mention on this. In U.S. v. Lanier, the second Lanier, 870F3546, the court intimated that the rumor hearing cannot be waived, that if there's any issue of potential jury influence, that rumor cannot be waived. And going back to when I talked about Judge giving us homework on one particular issue during the trial, at that point in time, no one, as we indicated, was saying rumor. And so we were just all thinking about how can we save this? They're already tainted. We need a mistrial. So if we're thinking that and we're... That's not saving it. Well, if we're not thinking rumor at the time, I think that would have been an appropriate time. I'm not saying that anybody did anything wrong. But if we had been given the homework, like we took a break and did homework, I think the week before, on another issue, then it wouldn't have been too... The jury wasn't sequestered. It's Friday. And if everybody needs to look at rumor, maybe we should have taken a break to look at rumor, even if it's an hour or two. We could have gone to the library or sat outside. Everybody had loads and loads of stuff. So I'm saying that this is too important to say that we waived it when we were asking for, as Your Honor said, the extreme option. Maybe if we had taken some time and looked at rumor at the time, then we could have preserved that and done the proper thing then. The other thing, Your Honors, is I want to mention the charts. I know that we have not talked about the charts. But the charts, if you see them, with one of the witnesses towards the end, I cannot Mr. Hobson, he actually saw Mr. Hobson get out and shoot Mr. Williamson in the face and kill him. That's a little different because Mr. Hobson was not on the charts. And Mr. Hobson was not on the charts because he did not have a cell phone with him at the time. So if you look at the convictions of everyone else who was on the charts, it seems that the charts had an undue influence on the jury because they were Kristoffsing and it was showing that these individuals were talking to each other. I believe that Mr. Hobson was not convicted because they thought that he was not around and not that the actual person that committed the murder could get off based on the charts. I know I'm out of time. Thank you. Thank you. Let's see if I can shoot through this real quick. One point in time, the foreman says we've reached finality on some issues. Government points out that there's a split verdict in this matter. Serious issue of jury tampering. Judge threatens contempt. Nobody wants to be held in contempt. There's nothing that says, nothing that implies nothing that juror A, juror B or any of the other jurors who heard about what jurors A and B dealt with didn't essentially just check out. They had reached decisions on some of these things and said sure, I can do that. Doesn't mean that they actually could. Relying on the foreman's interpretation of the judge's information to the other jurors and the juror's information to the judge. He did the best he could. Yes, sure. But we don't know that he was accurate. Also, pointing out Taylor from the D.C. Circuit. That was a matter where three jurors were talked to by a defense witness who asked if they had come up, had a verdict yet. They hadn't and the response was, you're just trying to make some more money. Get some more fees. That is wickedly different than what we were dealing with here. That's annoying. It's barely insulting. In that situation, the judge spoke with all of the jury. He didn't do it separately. He spoke to all of them and gave a prophylactic instruction saying to ignore that. We didn't have anything about ignore all this intimidation at any point in time other than it could be anything, anyone, which is also what happened in, I believe, Owen v. Duckworth, where the judge tells the individual who had the threat that anybody could have done that. And the juror says, sure. Gets excused. The other jurors also realized anybody could have done it except for some of them said, Owen. Your red light. I'm done. Thank you. He looked like he was firing up a question. I'm just trying to finish. Had me thinking. I agree with Mr. Parker on the Williams case, which he was describing out of the D.C. circuit, which was relied on by government counsel, is distinguishable for the reasons that he was discussing. Didn't involve threats. Whole jury was addressed. The Pennell case, which is debatable whether it's still good law for the reasons I explained in my reply brief, a Remmer hearing was actually conducted there. So the government's heavily relied on that case, but it did the thing that didn't happen here. What about the fact at the end that the government brought up a Remmer hearing and no defense counsel asked for it? That brings me right back to the cases we rely on where there's a sua sponte obligation. Those are different in kind than where she says, look, I think I should do this. And some of your co-counsel says, no, you shouldn't. There's no case you have where defense counsel objects to a Remmer hearing, and then the district court does it nonetheless. And then at the end, there's no chance at that point that there's going to be harm to the defendants if she does a Remmer hearing. And no one, again, the government asked for one, and no one else, why wouldn't the defendants join them if it was so important at that point? I have a few responses. It is similar to Corrado in that they objected to the sort of method that was being dealt, that the judge was deciding to deal with it. But it was, so I do think there are some similar cases. But I also think that Smith sits in a little different position in that he didn't sort of walk back or affirmatively say anything different. But he could have joined the government. At the end, yeah, of course. This is my last point. Our remedy, and we still would say, and I agree with Ms. Henderson, I think it's an abuse of discretion not to have granted a mistrial. I didn't really address that in my main portion. But for the reasons we had set out in our brief, I think that a presumption of prejudice arose under Olano in this type of case when you have a threat. This is like Remmer. This is like those cases where they have presumed prejudice. So I do think that a mistrial and there was an abuse of discretion in not granting it. Counsel your time, sir. I will just very quickly say, if the court does get to doing remands for a Remmer hearing, we'd ask the court to also make sure to vacate Mr. Smith's sentence to allow for correction of the conceded error. Okay. Thank you. Thank you. Ms. Henderson and Mr. Parker, your CJA, we appreciate it. And Mr. Martin, your career public servant, we appreciate that.